# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ELAINE R. MCKISSICK, in her own right and as Administratrix of the Estate of Troy Allen Cole, | : : : : | Civil Action No. 1:09-CV-01840 |
| Plaintiff | : : | (Judge Conner) |
| v. | : : | (Magistrate Judge Carlson) |
| COUNTY OF YORK, et al., | : : | |
| Defendants | : | |

## REPORT AND RECOMMENDATION

### I. INTRODUCTION

On November 5, 2008, Plaintiff's decedent, Troy Allen Cole, died after eight days spent unconscious at York Hospital. Mr. Cole was incarcerated at York County Prison from October 7, 2008, until the day of his death. Plaintiff, acting individually and as Administratrix of Mr. Cole's Estate, brought this suit pursuant to 42 U.S.C. § 1983 seeking damages for Defendants' alleged violations of the Eighth and Fourteenth Amendments as well as Title II of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"), in addition to other claims brought under state law. Defendants PrimeCare Medical, Inc., Michelle Murphy, CMA, B. Hamrick, RN, Kimberly Heim, RN, Michelle Rau, EMT, Dr. Von Kiel, and Todd Haskins, RN, CCHP, (jointly the "Medical Defendants,") and Defendants County of York, York

County Board of Inspectors a/k/a Your County Prison Board, Mary E. Sabol, Warden (collectively the "York County Defendants") each filed Motions to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(6). (Docs. 17 & 12.)

The Medical Defendants argue that Plaintiff's Eighth and Fourteenth Amendment claims should be dismissed for failure to plead adequate facts to support a claim for deliberate indifference to Mr. Cole's medical needs. The Medical Defendants argue that the issue presented in this case demonstrates nothing more than a disagreement over proper medical treatment actually provided, and that the facts pleaded do not support a claim for deliberate indifference to medical treatment rising to the level of an Eighth Amendment violation. In their motion, The York County Defendants contend that Plaintiff has not pleaded sufficiently a claim of discrimination or denial of medical services actionable under the ADA.

## II. BACKGROUND[1]

According to Plaintiff's complaint, the pertinent facts are as follows: Plaintiff's decedent, Mr. Cole, was, at all times relevant to this action, incarcerated at York County Prison. Plaintiff is the duly appointed legal representative and Administratrix of the Estate of Troy Allen Cole. At the time of his incarceration, Mr.

---

[1] The background provided is taken primarily from the Complaint because the facts are largely undisputed and because under the applicable standard of review, we must accept all well pleaded allegations as true.

Cole suffered from myriad health conditions, including, but not limited to, end-stage renal disease, regular methadone treatment for opioid addiction, hepatitis C, hypertension, and seizure disorder. Upon incarceration, Mr. Cole disclosed these health conditions to Defendants during his routine medical screening performed by PrimeCare employee Defendant Michelle Murphy. Defendants did not, upon Mr. Cole's admission to the prison, continue his methadone treatments or suggest a specific renal diet. Defendants did arrange for Mr. Cole to continue receiving his dialysis treatments three times a week through WellSpan, a dialysis treatment facility separate from the prison.

On October 12, 2008, Mr. Cole suffered a seizure, was transferred to York Hospital for examination, and was returned to the prison on October 14, 2008. On October 22, 2008, Mr. Cole underwent a physical examination by PrimeCare employee Defendant B. Hamrick. The following day, October 23, 2008, Mr. Cole's nephrologist at WellSpan noticed that Mr. Cole's potassium levels were rising, and prescribed Kayexalate to reduce and control potassium levels. Between October 23, 2008, and October 28, 2008, when Mr. Cole was transferred to York Hospital, Defendants did not provide Mr. Cole with the prescribed Kayexalate medication.

On or about October 25, 2008, Mr. Cole began complaining to the prison and WellSpan medical staff of discomfort, and voluntarily decided to terminate his

3

dialysis treatment early. Mr. Cole's health continued to deteriorate until October 27, 2008, when Mr. Cole reported to the prison medical staff that he was not feeling well. During that visit to the medical ward, the Medical Defendants found that Mr. Cole's blood pressure was severely elevated, and Mr. Cole requested medication because he felt he was "gonna stroke out." (Compl., ¶ 30.) Later that day, Mr. Cole was observed wheezing and anxious with periorbital edema, fluid on the lungs, and a headache. Defendant Kimberly Heim diagnosed Mr. Cole with anxiety and prescribed Tylenol. Several more times on October 27, 2008, Mr. Cole returned to the medical unit with shortness of breath, heart fluttering, elevated blood pressure, and tachycardia. Mr. Cole became concerned enough that he stated to Defendant Heim. "I'm dying." (Id., ¶ 34.) Defendant Heim notified Defendant Dr. Von Kiel of Mr. Cole's condition, and he ordered oxygen and dialysis to begin on October 28th. On the morning of October 28, 2008, Mr. Cole was found in his cell unresponsive next to an empty oxygen tank. CPR was initiated, and Mr. Cole was transferred to York Hospital. Mr. Cole never regained consciousness and was pronounced dead on November 5, 2008.

Plaintiff is the duly appointed Administratrix of decedent's estate. She commenced this action on September 23, 2009, by filing a complaint with this Court pursuant to federal question jurisdiction under 28 U.S.C. § 1331. The York County Defendants filed a Motion to Dismiss on November 9, 2009, and the Medical

4

Defendants filed a separate Motion to Dismiss on December 22, 2009. As of January 15, 2010, the motions were fully briefed and are now ripe for disposition. In their response to the York County Defendants' Motion to Dismiss, Plaintiffs concurred that Defendant Mary E. Sabol, York County Prison's Warden, is not a proper Defendant under Title II of the ADA and should be dismissed from that action.

### III. DISCUSSION

A. Rule 12(b)(6), Standard of Review

In this case, the Court must determine whether Plaintiff's claims brought under the Eighth and Fourteenth Amendment alleging deliberate indifference to Troy Allen Cole's medical needs, as well as her claims under the ADA, are sufficient to state a claim upon which relief can be granted. Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The United States Court of Appeals for the Third Circuit recently noted this evolving benchmark standard for legal sufficiency of a complaint stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in Bell Atlantic v. Twombly, 550 U.S. 544 (2007) continuing with our opinion in Philips[v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008)] and culminating recently with the Supreme Court's decision in Ashcroft v. Iqbal __U.S.__, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened

5

> form of pleading, requiring a plaintiff to plead more than the possibility
> of relief to survive a motion to dismiss.

Fowler v. UMPC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief can be granted, the Court must accept as true all allegations in the complaint, and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the Plaintiff. Jordan v. Fox Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Further, a court need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." Assoc. Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). The Supreme Court has stated that in order to state a valid cause of action, a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). The Court in Twombly stressed that the allegations and the supporting facts must raise a right to relief to something higher than a speculative level. Id. Recently, the Supreme Court refined these pleading requirements stating that the pled facts must

amount to more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Ashcroft v. Iqbal, __U.S.__, 129 S.Ct. 1937, 1949 (2009). Thus, when reviewing pleadings for sufficiency, the Supreme Court advises trial courts to:

> Begin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 1950.

As such, following Twombly and Iqbal a well-pleaded complaint must contain more than mere legal labels and conclusions and raise the plaintiff's claimed right to relief beyond the level of mere speculation. The United States Court of Appeals for the Third Circuit advised that:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do mor than allege the plaintiff's entitlement to relief.

7

> A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

    B.    <u>Plaintiffs have Pleaded Sufficient Facts to Survive a 12(b)(6) Motion to Dismiss</u>

Congress enacted 42 U.S.C. § 1983 to provide a vehicle for parties to seek relief for violations of the United States Constitution or other federal law when harmed by an entity acting under the color of state law. When analyzing § 1983 claims, trial courts must "identify the exact contours of the underlying right said to have been violated." <u>Natale v. Camden County Correctional Facility</u>, 318 F.3d 575, 581 (3d Cir. 2003) (quoting <u>County of Sacramento v. Lewis</u>, 523 U.S. 833, 841 n.5 (1998)). If the court determines that the alleged deprivation violates a constitutional right, the analysis then shifts to a determination of whether the state actor can be held liable for that violation. <u>Natale</u>, 318 F.3d at 581.

In the present case, Plaintiff has alleged breaches of the Eighth and Fourteenth Amendments of the United States Constitution. Specifically, Plaintiff alleges that the Medical Defendants were deliberately indifferent to Troy Allen Cole's medical needs. In order for a prisoner to make out a claim predicated on allegations of deliberate indifference, she must show (1) a serious medical need, and, (2) acts or omissions by prison officials indicating deliberate indifference to that need. <u>Rouse v. Plantier</u>, 182

F.3d 192, 197 (3d Cir. 1999) (internal citations and quotations omitted). Against these standards, courts have found deliberate indifference to be proven where there is "objective evidence that plaintiff had serious need for medical care and that prison officials intentionally refused to provide it." Id. In addition, courts have found deliberate indifference where prison officials delay medical treatment for non-medical reasons. Id. Courts have also found deliberate indifference in cases where a prison official prevents a prisoner from receiving needed or recommended medical treatment. Id. Courts in the Third Circuit have declined to differentiate between the standards of analysis between an Eighth Amendment and Fourteenth Amendment claim for deliberate indifference, so this Court will analyze the claims under the Eighth Amendment because it is unclear whether Plaintiff's decedent had been convicted or not.[2] Natale, 318 F.3d at 581 (citing Boring v. Kozakiewicz, 833 F.2d 468, 472 (3d Cir. 1987).

---

[2] As the Third Circuit has explained, the Eighth Amendment prohibits the infliction of cruel and unusual punishment against prisoners, but it only applies "after [the State] has secured a formal adjudication of guilt in accordance with due process of law." Natale, 318 F.3d at 581 (quoting City of Revere v. Massachusetts Gen. Hosp., 463 U.S. 244 (1983)) (further citation omitted). In cases where a pre-trial detained alleges under 42 U.S.C. § 1983 that he has been denied adequate medical care, it is proper for the claim to be brought as an alleged violation of the Fourteenth Amendment, because the Eighth Amendment ostensibly offers him no protection. Id. In contrast, a convicted inmate's claim for inadequate medical care would be brought properly under the Eighth Amendment. However, the Third Circuit has noted that this formal distinction does not give rise to any substantive legal differences, as claims pertaining to inadequate medical care are evaluated under the same standard, regardless of whether they are brought by a convicted inmate for alleged violations of the Eighth Amendment, or by a pre-trial detainee for alleged violations of the Fourteenth Amendment. Id.

Taking all reasonable inferences and accepting the facts pled as true, Plaintiff has adequately alleged a claim for deliberate indifference under the Eighth and Fourteenth Amendments. While the Medical Defendants did provide medical care to Plaintiff's decedent, Plaintiff has nevertheless stated a claim for deliberate indifference based on the allegation of several significant facts. On October 23, 2008, Mr. Cole's nephrologist ordered that he be prescribed Kayexalate to reduce and control Mr. Cole's rising potassium levels. Plaintiff alleges that the Medical Defendants failed to provide this recommended medication to a medically unsound prisoner. In their Motion to Dismiss, the Medical Defendants do not deny that they failed to provide this medication, which was ordered by Mr. Cole's nephrologist, and instead argue that this reflects nothing more than a difference of medical opinion. Notably, in their brief, the Medical Defendants make no mention of the October 23, 2008 meeting or of the prescribed medication aside from a brief mention of the alleged failure to provide the medication during the five days from the date the drug was prescribed and the date on which Mr. Cole lapsed into a coma from which he never awoke. (Def. Mot. ¶ 22(c); Def. Brief at 7.) These alleged facts present a colorable claim under the third prong of the Rouse test described above. Rouse, 182 F.3d at 197 (finding prison officials prohibited from preventing prisoners from receiving needed or recommended medical treatment). We believe Plaintiff has

pleaded sufficient facts to state a claim for deliberate indifference with respect to the failure to prescribe Kayexalate, as Mr. Coles's nephrologist had urged shortly before his death.

Furthermore, when Mr. Cole visited the medical unit on multiple occasions on October 27, 2008, he presented with a number of serious symptoms including severely elevated blood pressure, periorbital edema, fluid on the lungs, heart fluttering, and tachycardia. In response, he was prescribed first Tylenol, and then oxygen. If, as Plaintiff alleges, Mr. Cole's symptoms constituted significant indicators of imminent heart failure, it may be that the response of the Medical Defendants could reasonably be found to rise to the level of deliberate indifference of a known serious health risk. This situation is roughly analogous to a recent Third Circuit case where an inmate continuously returned to the medical unit with increasingly severe symptoms, and no significant medical care was rendered. Pearson v. Prison Health Services, 348 F. App'x 722 (3d Cir. 2009) (finding inmate sufficiently pleaded Eighth Amendment claim where he alleged that he complained of severe abdominal pain and other maladies, and prison staff responded inadequately and with substantial delay). These factors, coupled with the allegedly inadequate responses by Defendants Von Kiel and Heim could potentially be found to give rise to a claim for deliberate indifference under the first two prongs of the Rouse test

above. Rouse, 182 F.3d at 197 (finding Eighth Amendment may be violated where prison officials intentionally refused to provided known needed medical care and delayed medical care for non-medical reasons).

In order to extend liability for deliberate indifference to medical needs to an employer, a plaintiff must provide evidence that there was a relevant policy, custom, or practice that caused the constitutional violation alleged. Natale, 318 F.3d at 583-84. These allegations of a relevant policy, custom, or practice must be pleaded sufficiently and, consistent with the evolving pleading standard, must be more than mere conclusions. In Natale, the United States Court of Appeals for the Third Circuit identified three situations where acts of a government employee or other state actor may be deemed to be the result of a policy or custom of the entity for which the employee works, thereby rendering the entity liable under 42 U.S.C. § 1983. Id. at 584. First, liability will extend to the entity when the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act is an implementation of that policy. Id. Second, liability extends when no rule has been announced as policy but federal law has been violated by an act of the policymaker itself. Id. Third, liability will extend when the policymaker has failed to act affirmatively at all, and the need to take some action to control the agents of the government was so obvious, and the inadequacy of existing practice so likely to result

in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need. Id.

Here, Plaintiff has alleged numerous policies and procedures in an attempt to adequately plead the existence of a municipal custom or policy that effected the breaches of Mr. Cole's federal rights. Specifically relevant for purposes of the pending motion, Plaintiff alleges that the Medical Defendants failed to implement adequate training of staff to respond to medical emergencies and medical needs of inmates, inadequate maintenance and monitoring of medical equipment, and failure to properly prescribe and administer medical treatment and medication. We find that these allegations, accepted as true, are sufficient to allege a pattern of practices and policies that could lead to constitutional violations with sufficient specificity to survive a Motion to Dismiss at this point.

    C.    <u>Plaintiff has Pleaded Sufficient Facts Under the Americans with Disabilities Act to survive a 12(b)(6) Motion to Dismiss.</u>

The York County Defendants have moved to dismiss Plaintiff's claim against them under Title II of the ADA, in which she contends that the York County Defendants denied Mr. Cole benefits of some service, program, or activity offered by the prison. The York County Defendants argue that these claims should be dismissed because this case is a mere disagreement with medical treatment, not a denial of

medical treatment and thus must be dismissed. In response, Plaintiff alleges that she has pleaded adequate facts with sufficient specificity to defeat the motion.

Under the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity or be subject to discrimination by any such entity." 42 U.S.C. § 12132. Thus, to succeed under a claim of discrimination based on a disability, the claimant must show: (1) he is a qualified individual; (2) with a disability; (3) he was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity or be subject to discrimination by any such entity; (4) by reason of his disability. Bowers v. NCAA, 475 F.3d 524, 553 n.32 (3d Cir. 2007).

In their motion , it appears that the York County Defendants do not dispute Plaintiff's allegation that Mr. Cole was disabled under the definition of the ADA. Accordingly, for purposes of adjudicating the pending motion, the Court accepts as true the assertion that Mr. Cole was a qualifying individual with a disability. With this fact assumed to be true for purposes of this motion, Plaintiff must next allege adequately some evidence that Mr. Cole was excluded from participation in or denied the benefits of some service, program, or activity offered by the prison, and that Mr. Cole's disability was the motivating factor in his denial of participation or benefits.

14

Brown v. Pennsylvania Dep't of Corr., 290 F. App'x 463, 467 (3d. Cir. 2008). The ADA further requires that public entities make reasonable accommodations for disabled inmates after the inmate either requests an accommodation, or the accommodation is apparent enough to not need a request for a reasonable accommodation. Kiman v. New Hampshire Dep't of Corr., 451 F.3d 274, 283 (1st Cir. 2006); cf. Taylor v. Phoenixville School District, 184 F.3d 296, 313 (3d. Cir 1999) and Coneen v. MBNA America Bank, N.A., 334 F.3d 318, 332 (3d. Cir. 2003) (employment cases noting that no formal request for accommodation must be made and the accommodating party must be aware of the disability and the want for accommodation).

Medical negligence does not rise to the level of discriminatory treatment under the ADA, and the ADA does not provide a vehicle to bring a claim for medical malpractice. Bryant v. Madigan, 84 F.3d 246, 249 (7th Cir. 1997); *see also* Thomas v. Pennsylvania Dep't of Corr., 615 F. Supp.2d 411, 429-30 (W.D. Pa. 2009) (citing favorably Bryant and stating that "incompetent treatment" does not rise to the level of discriminatory treatment under the ADA). However, the court in Kiman, held that denying access to medications is not medical judgment or negligence, but instead constitutes an outright denial of medical services. Kiman, 451 F.3d at 287.

Plaintiff contends that Mr. Cole was denied methadone treatment, which disrupted his ability to derive benefit from other life-preserving treatment. In addition, Plaintiff here contends that Mr. Cole was denied Kayexalate even though his nephrologist expressly prescribed Mr. Cole the drug to treat his rising potassium levels. As such, Plaintiff has pleaded facts alleging a claim based on corrections officers and prison medial officials denying Mr. Cole access to his prescription medications. This court concludes that Plaintiff has met the burden of pleading sufficiently to survive a Motion to Dismiss.[3]

## IV. **RECOMMENDATION**

For the reasons set forth above, it is hereby RECOMMENDED that the Court DENY the Medical Defendants Rule 12(b)(6) Motion to Dismiss (Doc. 17). It is further recommended that the Court DENY the York County Defendants Rule 12(b)(6) Motion to Dismiss (Doc. 12).

The parties are further put on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in

---

[3] We, of course, express no opinion at this stage of the case regarding the ultimate merits of these claims. Nor do we opine regarding whether these claims may ultimately be subject to a properly documented motion for summary judgement. Suffice it to say that these allegations, which entail claims arising from the death of an inmate entrusted to the custody and care of the defendants who sought but did not receive a specific course of treatment for life-threatening conditions even after he directly brought his condition and care needs to the defendants' attention, states a viable cause of cause which may not be summarily dismissed on the pleadings.

16

28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 19th day of March, 2010.

                                            *S/Martin C. Carlson*
                                            **United States Magistrate Judge**